[No. 33176. *En Banc.* February 18, 1955.]

PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY, *Respondent*, v. THE WASHINGTON STATE POWER COMMISSION *et al., Appellants.*[1]

*The Attorney General, Donald E. Watson* and *Frank P. Hayes, Assistants,* for appellants.

*Washington & Wickwire (Wood, King & Dawson,* of counsel), for respondent.

[1]Reported in 280 P. (2d) 264.

MALLERY, J.—Public utility district No. 2 of Grant county began a study of the Priest Rapids dam site on the Columbia river in 1951. The site was then an army engineers' project, but no time for construction had been fixed, and none was contemplated in the near future.

On May 27, 1952, the public utility district No. 2 of Grant county officially adopted by resolution the project of constructing the Priest Rapids dam and hydroelectric plant, and, on May 28, 1952, filed its petition in eminent domain, in the superior court for Grant county, to condemn the site. On July 17, 1952, it filed an application with the Federal power commission for a preliminary permit for the project. The next routine step taken was to secure the introduction in the Congress of the United States on April 28, 1953, of an act deauthorizing the army engineers' project. At that time, there was no Washington state power commission. The right of the public utility district No. 2 of Grant county to proceed with the project was subject only to the authority of the Federal power commission over navigable streams.

■ ■ In this posture of affairs, the Laws of 1953, chapter 281, p. 743, RCW 43.52, created the Washington state power commission. It was organized in December, 1953. It had the unquestioned power to *originate* hydroelectric projects and to construct them, *if no public utility district desired to do so*. It did not have the power to supersede public utility districts in their pending projects or impair their existing rights therein. Section 10 of the act, p. 752 [*cf*. RCW 43.52-.450], so provides, in this language:

"The provisions of this act shall be cumulative and shall not impair or supersede the powers or rights of any person, firm or corporation or political subdivision of the state of Washington under any other law. . . ."

A public utility district is, of course, a political subdivision of the state within the contemplation of the act.

Notwithstanding the prior adoption of the Priest Rapids project by the public utility district No. 2 of Grant county and its pending *condemnation proceeding for the dam site*, the Washington state power commission applied for a pre-

liminary permit for itself on the same project on July 22, 1954. Five days later, Congress temporarily deauthorized the army engineers' Priest Rapids project and set a deadline of July 27, 1956, for applications for a construction license. The large amount of preliminary engineering necessary to a project of that magnitude required the issuance of a preliminary permit by the Federal power commission, which both parties had then applied for at the time of the deauthorization.

Time became the essence of this situation, and to cope with it the public utility district No. 2 of Grant county first commenced the instant action to restrain the Washington state power commission (1) from pursuing its application to the Federal power commission for a preliminary permit; (2) from making an application for a license to construct the project; and (3) from subjecting it to the administrative provisions of the Laws of 1953, chapter 281, § 7, p. 748 [cf. RCW 43.52.320]. It was granted an emergency restraining order to that effect. It next entered into a stipulation with the Washington state power commission for the issuance to it of a preliminary permit by the Federal power commission. This was done on October 21, 1954, by a form of permit which preserved the rights of the Washington state power commission and recognized the parties as being "upon an equal footing" in their eligibility for a license to construct the project after the preliminary work was done.

This cause then came on for hearing, and, on October 25, 1954, the trial court held:

". . . that the acts of the defendant, Washington State Power Commission, in commencing proceedings under Section 7 of Chapter 281 of the Laws of Washington 1953, in relation to the Priest Rapids Hydro-Electric Project, and its acts in applying for and pressing for issuance of a preliminary permit from the Federal Power Commission in connection with said Priest Rapids Hydro-Electric Project, *are without authority in law*, . . ." (Italics ours.)

It continued its injunction *pendente lite*. The Washington

state power commission thereupon appealed to this court.

The appellant takes the position that the respondent, public utility district No. 2 of Grant county, had no prior rights or powers in the project which could be impaired or superseded under the purview of the statute. The appellant's theory is that prior to the act of Congress deauthorizing the army engineers' Priest Rapids project, the Federal power commission had no authority to issue either a preliminary permit or a construction license thereon to any applicant. All applications, therefore, became effective simultaneously on July 27, 1954, the date of deauthorization by Congress of the project, when for the first time the Federal power commission had the power to act upon them. Prior to that time, they were inchoate applications only.

██ We do not agree with appellant. The respondent, acting legally pursuant to the prior law governing public utility districts, acquired definite rights by its resolution adopting the project and the commencement of its condemnation suit. Even though the resolution was a preliminary step, it created a legal status and vested rights in the respondent which the appellant could not impair or supersede. Indeed, respondent would not have needed the preliminary permit and construction license from the Federal power commission but for the fact that the Columbia river is a navigable stream. The preliminary permit in question does not create respondent's right and power to proceed with the project. Its power is derived from the Washington statute, and its rights from the valid resolution passed pursuant thereto. The preliminary permit is merely the green light given it by the Federal power commission, which, while it is a prerequisite to the exercise of respondent's right, is not the source of it. See *Tacoma v. Taxpayers*, 43 Wn. (2d) 468, 262 P. (2d) 214.

We hold that respondent public utility district No. 2 of Grant county had a prior right in the project in question. It therefore follows that the trial court was correct in hold-

ing that the appellant, in its attempt to impair and supersede that right, acted without authority of law.

The judgment is affirmed.

SCHWELLENBACH, DONWORTH, FINLEY, ROSELLINI, and OTT, JJ., concur.

HAMLEY, C. J. (concurring in part and dissenting in part) —In doing, or threatening to do, the acts which have been enjoined *pendente lite,* appellant commission purports to act under authority of chapter 281, Laws of 1953, p. 743. I agree with the majority that the authority conferred by this act may not be exercised in a manner which violates the provisions of § 10 thereof (RCW 43.52.450). I also agree that an injunction *pendente lite* is warranted to the extent, if any, such injunction is needed to stop an actual or threatened violation of that section.

Section 10 reads as follows:

"The provisions of this act shall be cumulative and shall not impair or supersede the *powers or rights* of any person, firm or corporation or political subdivision of the state of Washington *under any other law.* . . ." (Italics mine.)

What are the "powers or rights" of respondent district "under any other law," with respect to the Priest Rapids hydroelectric project? For the purpose of passing upon the validity of this temporary injunction, and without undertaking to foreclose a judicial examination of such matters in this or other proceedings, I would enumerate such powers or rights as follows: (1) to conduct studies, acquire property, and incur expense in developing data in support of its application before the Federal power commission for a license to construct the Priest Rapids hydroelectric project; (2) to apply to the Federal power commission for such a license; and (3) to proceed in the foregoing matters without the necessity of complying with any provision of chapter 281, Laws of 1953, or of participating in any proceedings instituted by appellant commission thereunder.

I do not understand that appellants are interfering with, or threatening to interfere with, any of these rights or pow-

ers. However, if it is considered that there is any such interference or threat, I would favor entry of an injunction *pendente lite* to protect respondent in the exercise of these powers or rights.

In my opinion, respondent district does not have the power or right "under any other law" to pursue its application before the Federal power commission free of competing applications filed by other persons, firms, corporations, or political subdivisions. As in the case of any other applicant before the Federal power commission, respondent had to take its chances in competition with every other applicant. The fact that respondent has preceded others in applying for such a license and has expended money in perfecting the same gives it no legally-recognized "power or right" under "any other law" to a free field in pursuing such application. It is for the Federal power commission to determine whether respondent is entitled to any consideration because of its priority of effort. Chapter 281, Laws of 1953, gave respondent no additional powers or rights—it only reserved the powers or rights respondent already had "under any other law."

It follows, I believe, that § 10, quoted above, provides no basis for enjoining appellant commission from pursuing its competing application before the Federal power commission. In pursuing such application, and as a preliminary step thereto, an administrative proceeding must be held in accordance with § 7, chapter 281, Laws of 1953 (RCW 43.52.320). Such administrative proceeding is for the protection of respondent and those similarly situated. It is designed to restrict the power of appellant commission to proceed with projects in which public utility districts and others are interested.

I would accordingly reverse and remand the order under review, with directions to modify the injunction *pendente lite* by adding the provisions suggested earlier in this opinion, and striking the present provision restraining appellant commission from pursuing its application to the Federal power commission for a license to construct the Priest

Rapids hydroelectric project, and the provision restraining appellant commission from proceeding in accordance with the administrative provisions of § 7 of the act. The inclusion of the suggested new provisions would give assurance that respondent need not itself participate in such administrative proceeding.

Appellants and respondent raise some constitutional questions. These need not now be decided. This is an action for a declaratory judgment. The temporary restraining order and injunction *pendente lite* were entered only to maintain the *status quo* pending disposition of the declaratory judgment action. The main action has not yet come to trial. Hence, it seems to me our present review should be limited to those questions necessary for a determination of the validity of the injunction *pendente lite*.

WEAVER and HILL, JJ., concur with HAMLEY, C. J.