[No. 36708.   En Banc.   September 26, 1963.]

*In the Matter of the Application of* WASHINGTON PUBLIC POWER SUPPLY SYSTEM.*

*Smith, Gray & Rodgers, Metzger, Blair & Gardner,* and *Blair, Thomas, Hicks, O'Hern & Hokanson,* for appellants.

*Houghton, Cluck, Coughlin & Schubat,* for respondent Washington Public Power Supply System.

*The Attorney General, Charles B. Roe, Jr.* and *Timothy R. Malone, Assistants,* for respondent Coe.

HILL, J.—This is an appeal from a judgment of the Superior Court of Thurston County affirming an order of the Director of Conservation, State of Washington (hereinafter referred to as the Director), acting under RCW 43-.52.360.[1]

*Reported in 385 P. (2d) 299.

[1] This is a very long section (about 3½ pages in the 1957 session laws being § 1 of chapter 295). For easier identification the 6 unnumbered paragraphs of RCW 43.52.360 will be referred to as "first, second, third, etc."

The Washington Public Power Supply System (hereinafter referred to as WPPSS) is a combination of 12 public utility districts in this state, forming a joint operating agency (hereinafter referred to as JOA) for the purpose of "acquiring, constructing, operating and owning" facilities for the generation and transmission of "electric energy and power." RCW 43.52.360.[2]

WPPSS desires to construct and operate a hydroelectric project on the Snake River at a location entirely outside the state of Washington and where the river constitutes the boundary between Oregon and Idaho.

Whether it has, as a municipal corporation of the state of Washington, the power and authority to construct and operate such a project is not before the court and is not here passed upon. This also represents the position of the Director and WPPSS both in their briefs and in the declarations of their counsel at the time of argument. We make this statement at this point in the opinion so that it will be clear throughout what we are not deciding and so there may be no misapprehension as to what we are deciding when we hereafter refer to the "competency" of WPPSS within the purview of RCW 43.52.360.[3]

What *is* being decided here requires a brief preliminary explanation. An application for the formation of a JOA, such as the WPPSS, must be made to the Director; however, his approval is not necessary, for if he does not act upon the application within a specified time "the application shall be deemed to have been approved and the operating agency established." RCW 43.52.360.[4]

The application for the formation of a JOA must contain a general description of the project it is organized to undertake and the

" . . . principal project works, including dams, reservoirs, power houses and transmission lines; (3) the general location of the project and, if a hydroelectric project, the

---

[2] First paragraph.
[3] Fourth paragraph.
[4] Fourth paragraph.

name of the stream on which such proposed project is to be located; . . ." RCW 43.52.360[5]

The only requirement relative to the undertaking of projects, in addition to those for which a JOA is formed, seems to be the approval of the "legislative bodies of a majority of the members thereof." RCW 43.52.360[6]

However, the Director again enters the picture if the JOA desires to undertake a hydroelectric project, in addition to those for which it was formed, at a site or sites

". . . upon which any publicly or privately owned public utility has a license or permit or has a prior application for a license or permit pending with any commission or agency, state or federal, having jurisdiction thereof, . . ." RCW 43.52.360[7]

In such a situation, the application to construct such an additional project shall be made to the Director in the manner provided for in the original organization of the JOA, and there must be an order authorizing such construction. RCW 43.52.360[8]

It is such a situation with which we are here concerned. The WPPSS is desirous of undertaking a hydroelectric project at alternate sites on the Snake River: one known as the Nez Perce site, which is just below the confluence of the Salmon River with the Snake River, and the other known as the High Mountain Sheep site, just above the confluence of the two rivers. (At both sites, the Snake River is the boundary between Idaho and Oregon.) It is clear from the statute, and quite significant from the standpoint of the Director's capacity to determine any issue relative to the power and authority of a JOA to operate outside the state, that no application had to be made to the Director had the Nez Perce site been the only one in which WPPSS was interested, because no prior application for a license or permit was pending with any agency as to that site.

---

[5]Second paragraph.
[6]Fifth paragraph.
[7]Fifth paragraph.
[8]Fifth paragraph.

It is apparent, then, that it was the fact that there was some sort of prior application with the Federal Power Commission in connection with the High Mountain Sheep site which necessitated WPPSS coming to the Director with an application to construct an additional project (that is, additional to the project for which it was originally created). It seems apparent that the purpose of this provision, relative to prior applications with the Federal Power Commission, was to put some sort of a check upon the unseemly and expensive controversies over priority in applications for the development of power sites, of which *Public Utility Dist. No. 2 of Grant Cy. v. Washington State Power Comm.* (1955), 46 Wn. (2d) 233, 280 P. (2d) 264, is an example.

In any event, the WPPSS did ask the blessing of the Director upon its taking on an additional project, *i.e.,* either the development of the Nez Perce or High Mountain Sheep sites on the Snake River.

Our statute contemplates that when such an application is made that objectors may intervene in the proceeding; and if aggrieved, by any order or finding of the Director shall have the right of appeal to the superior court. RCW 43.52.360.[9] The Pacific Northwest Power Company, the Pacific Power & Light Company, and the Washington Water Power Company, all corporations, did object.

The Director, without a hearing, made findings and conclusions and entered an order which recited that the WPPSS,

" . . . is hereby authorized to construct either the Nez Perce project or the High Mountain Sheep project . . . for which it may be granted the required governmental permits, licenses or authority, and its competency to proceed according to law to procure such permits, licenses or authority is hereby established."

The objectors exercised their right to appeal to the superior court. In an excellent opinion by that court, the Honorable John E. Murray disposed of the various contentions of the objectors and, after pointing out that the power

---

[9] Sixth paragraph.

and authority of the WPPSS to proceed with the development of a hydroelectric project outside of the state was not before the court, affirmed the order of the Director. The objectors appeal from the affirmance of the order of the Director to this court and again urge that the Director's order is an erroneous determination of the issue of whether the WPPSS has the power and authority, as a municipal corporation of this state, to proceed with such a project outside of the state. At the very beginning of the opinion we stated our views: That such a question was not before us because it was not before the Director. The Director and the WPPSS agree.

This leaves but one issue on this appeal. Should the Director have held a hearing on the objections?

■ We have pointed out that a JOA can come into existence and enter upon its original project or projects without any action of the Director (RCW 43.52.360[10]); however, where a JOA desires to undertake an additional project at a site upon which a public utility has a prior application for a license pending with any agency, it cannot construct such additional project until the Director makes an order authorizing the same (RCW 43.52.360[11]). Except for that difference the procedure, with reference to the original application for the creation of a JOA to construct its original projects, is subject to the same requirements (RCW 43.52.360[12]). It is abundantly clear that the Director can proceed to make his findings with or without a hearing (RCW 43.52.360[13]).

The Director was acting as an administrative officer in the determination of those things which the legislature specifically delegated for his consideration. This was done after a consideration of the application and the objections thereto, without a hearing, as expressly provided by law.

---

[10]Fourth paragraph.

[11]Fifth paragraph.

[12]Fifth paragraph.

[13]Fourth paragraph: "Within ninety days after the date of last publication the director shall *either* make findings thereon *or have instituted a hearing thereon*. . . ." (Italics ours)

The order appealed from is affirmed.

OTT, C. J., FINLEY, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

WEAVER, J. (dissenting)—I dissent from that portion of the majority opinion which states:

"Whether it [WPPSS] has, as a municipal corporation of the state of Washington, the power and authority to construct and operate such a project [Nez Perce or High Mountain Sheep dams between Oregon and Idaho] *is not before the court* and is not here passed upon." (Italics mine.)

I believe the question is before this court. If we do not recognize and pass upon it, we will, in the almost predictable future, be confronted with the argument that the question is res judicata.

The fourth unnumbered paragraph of RCW 43.52.360 directs that the order entered by the Director of Conservation and Development

". . . shall establish the *competency* of the operating agency to proceed according to law to procure such permits, licenses or authority." (Italics mine.)

Pursuant to the statute, the Director entered an order entitled, "Order Authorizing the Undertaking of Additional Projects by Washington Public Power Supply System." The order recites that the Supply System had applied

". . . for an order authorizing the Supply System to construct either of the following described projects for which it may be granted the required governmental permits, licenses or authority."

The decretal portion of the Director's order provides:

"IT IS THEREFORE ORDERED that the Washington Public Power Supply System, a municipal corporation of the State of Washington, *is hereby authorized to construct* either the Nez Perce project or the High Mountain Sheep Project above described for which it may be granted the required governmental permits, licenses or authority, and *its competency to proceed* according to law to procure such permits, licenses or authority *is hereby established*." (Italics mine.)

"Competent" is a well-defined word; it is not ambiguous:

> "Able, fit, qualified; authorized or capable to act." Bouvier's Law Dictionary (Rawle's 3d Rev.) (8th ed.)
> "Duly qualified; answering all requirements; having sufficient ability or authority; possessing the requisite natural or legal qualifications; able; adequate; suitable; sufficient; capable; legally fit." Black's Law Dictionary (4th ed.) (1951).

Thus, pursuant to statute (RCW 43.52.360, second paragraph), WPPSS sought from the proper state official, a declaration of its competency to construct and operate a hydroelectric project outside the state of Washington. Objections to the petition were filed (RCW 43.52.360, third paragraph); the proper state official entered his findings and order (RCW 43.52.360, fourth paragraph). An appeal was prosecuted (RCW 43.52.360, sixth paragraph) in accordance with RCW 43.52.430 to the Superior Court for Thurston County, and from there to this court. From this, I conclude that the question is properly before us; and if not decided, becomes res judicata, for the doctrine embodies not only questions decided, but also questions upon " . . . which there has been an opportunity to litigate, . . . " *Walsh v. Wolff,* 32 Wn. (2d) 285, 287, 201 P. (2d) 215 (1949).

Although the subject matter has evolved, and will continue to develop into a Hydra-headed controversy, there is, in the present posture of the matter before us, a single question determinative of its disposition.

Does WPPSS, a municipal corporation (RCW 43.52.360, first paragraph), created by the state as a subordinate unit,[14] have the *statutory power* to construct and operate a hydroelectric project outside the state of Washington?

Whether such power exists under the statutes of the

---

[14]" . . . It [a municipal corporation] has neither existence nor power apart from its creator, the legislature, except such rights as may be granted to municipal corporations by the state constitution." *Lauterbach v. Centralia,* 49 Wn. (2d) 550, 554, 304 P. (2d) 656 (1956).

state presents a problem peculiarly within the province and jurisdiction of the courts of this state.

WPPSS has, however, sought elsewhere for an answer to the question. It commenced a declaratory judgment action—*Washington Public Power Supply System, a municipal corporation, Plaintiff, v. Pacific Northwest Power Company, a corporation, Defendant,* Civil Case No. 62-110 —in the United States District Court, District of Oregon. Both parties moved for summary judgment. In the words of the district court:

" . . . The plaintiff [WPPSS] asks that the court adjudicate and declare:

"1. That subject to the requirements of the Federal Power Act (Title 16 U.S.C.A. Ch. 12) the plaintiff is authorized under the laws of the State of Washington, particularly RCW Ch. 43.52, to construct either the Nez Perce or High Mountain Sheep Project . . ."

In an exhaustive and well-considered written opinion, Judge Kilkenny analyzed all of the applicable Washington statutes and concluded that WPPSS does not have authority to construct, in its own name, either or both of the planned hydroelectric projects. (*Washington Public Power Supply System v. Pacific Northwest Power Co.,* 217 F. Supp. 481 (1963)).[15]

It would be presumptuous of me, in this dissent, to attempt to paraphrase all of Judge Kilkenny's scholarly opinion. I confine myself to a discussion of two subsections of the applicable statute, which I believe to be the nub of the problem.

The hydroelectric potential of the state of Washington and of the Pacific Northwest has long been recognized as a natural resource of the highest calibre. Its development presents more than a state problem; it is a regional problem involving the United States, the Dominion of Canada, and several states, in addition to our own. The specific question of the instant case is whether plaintiff has

---

[15]Currently on appeal to the United States Court of Appeals, Ninth Circuit.

the statutory authority to act independently of others outside the state of Washington.

RCW 43.52.300(2)[16] is the statutory grant of power to a joint operating agency such as WPPSS to *construct* hydroelectric projects and transmission systems. The statute does not mention whether the power is to be exercised within or without the state. Obviously, there is no necessity to mention specifically a right to *construct* within the state. I agree with Judge Kilkenny's conclusion that

". . . There is nothing in this subsection to indicate an intention on the part of the Washington Legislature to authorize the Commission to construct its own hydroelectric projects outside of the State of Washington. . . ."

The most pertinent language of the statute is found in RCW 43.52.300(3):

"To negotiate and enter into contracts with the United States or any of its agencies, with any state or its agencies, with Canada or its agencies or with any district or city of this state [for the construction, etc. of electric generating and transmission plants] *either within or without the state of Washington,* . . . Such negotiations or contracts shall be carried on and concluded with due regard to the position and laws of the United States in respect to international agreements." (Italics mine.)

A comparison of subsections (2) and (3) of the statute leads me to the conclusion that our legislature had a keen

---

[16]"To construct, condemn, purchase, lease, acquire, add to, extend, maintain, improve, operate, develop and regulate plants, works and facilities for the generation and/or transmission of electric energy and to take, condemn, purchase, lease and acquire any real or personal, public or private property, franchise and property rights, including but not limited to state, county and school lands and properties, for any of the purposes herein set forth and for any facilities or works necessary or convenient for use in the construction, maintenance or operation of any such works, plants and facilities; provided that the commission shall not be authorized to acquire by condemnation any plants, works and facilities owned and operated by any city or district, or by a privately owned public utility. The commission shall be authorized to contract for and to acquire by lease or purchase from the United States or any of its agencies, any plants, works or facilities for the generation and transmission of electricity and any real or personal property necessary or convenient for use in connection therewith."

appreciation of the complex problems that might arise from a Washington municipal corporation operating in a foreign jurisdiction. It gave the operating agency full and complete power to construct hydroelectric projects within the state; it authorized the agency to cooperate, by negotiations and contracts, with other states, the United States, and Canada for the *planned and orderly* development of the hydroelectric resources of the entire region.

Judge Kilkenny observed:

" . . . The very fact that the Legislature used the language 'without the state' in subsection (c) [3] and did not use it in subsection (b) [2] indicates beyond question an intention to withhold that power insofar as the exercise of the powers of subsection (b) [2] were concerned. On its face, the language of subsection (c) [3] authorizes the plaintiff to *negotiate and enter into contracts* with the United States or with other states or Canada or the agencies thereof with regard to the construction, operation and maintenance of plants and transmission facilities. . . . "

I do not believe that the legislature intended that WPPSS " . . . should 'go it alone' on foreign soil. . . . " I would, therefore, reverse the judgment of the trial court and remand this case with directions to set aside the order of the Director of Conservation and Development, dated July 7, 1961.

DONWORTH, J. (concurring in Judge Weaver's dissent)— I concur in the dissenting opinion by Judge Weaver and agree with his reasons for favoring reversal of the trial court's judgment.

In my opinion, there is an additional reason for reversal.

The decretal portion of the judgment (which is quoted in the dissent) authorized WPPSS to construct either of the two proposed hydroelectric projects on the Snake River outside the boundaries of the state of Washington

" . . . for which it may be granted the required governmental permits, licenses or authority, and its competency to proceed according to law to procure such permits, licenses or authority is hereby established."

Since the Snake River is a navigable stream, this authority relates to the necessary application by WPPSS to the Federal Power Commission for a license to construct one of the two proposed hydroelectric projects pursuant to the provisions of the Federal Power Act.

Section 9(b) of that act requires, as a condition precedent to the issuance of a license, that the commission make a finding that the applicant has complied with the requirements of the laws of the state with respect to the right to engage in the business of developing, transmitting, and distributing electric power and any other business necessary to effectuate the purpose of the license.

The importance of such a finding by the commission is discussed at some length in the dissenting opinion in *Beezer v. Seattle,* 60 Wn. (2d) 239, 373 P. (2d) 796 (1962). See, particularly, pages 249-253.

See, also, the concurring opinion in *Tacoma v. Taxpayers of Tacoma,* 60 Wn. (2d) 66, 371 P. (2d) 938 (1962) (beginning at page 73).

Under the opinion of the majority in the present case, it seems to me that the Federal Power Commission (in the event it is inclined to issue to WPPSS a license for either project) will feel compelled to make a finding that WPPSS has established its competency under state law to engage in the business of developing, transmitting, and distributing electric power at *either* the Nez Perce project or the High Mountain Sheep project.

I think that the majority is in error in its interpretation of the applicable state statutes. In my opinion, since both of these projects are located outside the state of Washington, and since, for the reasons stated by the United States District Court for the District of Oregon in *Washington Public Power Supply System v. Pacific Northwest Power Co.,* 217 F. Supp. 481 (1963), WPPSS has not been given authority by the legislature to construct such project outside the boundaries of the state, this court should reverse the judgment of the trial court.

For the reasons stated in Judge Weaver's opinion (including those stated by the United States District Court for Oregon in the above-cited case), I think that the majority opinion in the present case will cause the Federal Power Commission to make an erroneous finding under § 9 (b) as to WPPSS' competency to carry out the purposes of a license for a project located outside the state. This error will have serious consequences. *Tacoma v. Taxpayers of Tacoma,* 357 U. S. 320, 2 L. Ed. (2d) 1345, 78 S. Ct. 1209 (1958), and *First Iowa Hydro-Electric Co-op. v. Federal Power Comm.,* 328 U. S. 152, 90 L. Ed. 1143, 66 S. Ct. 906 (1946). See partial dissent of Mr. Justice Frankfurter in the latter case.

If, on the other hand, the judgment of the trial court is reversed, presumably no such erroneous finding will be made by the Federal Power Commission, and no license will be issued for either project.

I, therefore, join in dissenting to the majority opinion in this case.

---

December 19, 1963. Petition for rehearing denied.