WASHINGTON PUBLIC POWER SUP-
PLY SYSTEM, a municipal cor-
poration, Plaintiff,

v.

PACIFIC NORTHWEST POWER COM-
PANY, a corporation, Defendant.

Civ. No. 62-110.

United States District Court
D. Oregon.

Oct. 19, 1962.

Norman A. Stoll of Reinhardt, Coblens & Stoll, Portland, Or., and Jack R. Cluck, of Houghton, Cluck, Coughlin & Schubat, Seattle, Wash., for plaintiff.

Hugh Smith and Allan A. Smith of Smith, Gray & Rodgers, Portland, Or., for defendant.

KILKENNY, District Judge.

Plaintiff is a municipal corporation organized under the laws of the state of Washington. Defendant is a private corporation organized under the laws of the state of Oregon. Plaintiff seeks a declaratory judgment proclaiming that plaintiff, under the Federal Power Act, 16 U.S.C. § 791a et seq., § 435.2 of the Revised Code of Washington, and other applicable statutes, is authorized to construct either or both of two power projects, viz., Nez Perce or High Mountain Sheep, the projects being more specifically described in an order signed by the Director of Conservation of the state of Washington on July 7, 1961.

Defendant, in its answer, alleges that on April 8, 1955, the Federal Power Commission, pursuant to 16 U.S.C. §§ 797, 798, granted to defendant a preliminary permit effective as of April 1, 1955, for a period of three years, for a proposed power project on the Middle Snake River. The project described in said permit consisted of two developments on the Middle Snake River, namely, Mountain Sheep development and Pleasant Valley development. Defendant has complied with all of the terms and conditions of said permit.

On September 7, 1955, defendant filed an application for a license with the Mountain Sheep development and with the Pleasant Valley development at specific points mentioned in the answer. During the course of the investigations under the permit, the defendant had investigated a "high" Mountain Sheep Dam but rejected the site because of unsuitability, but had not investigated High Mountain Sheep development at the site below the confluence of the Snake and Imnaha Rivers in view of a certain recommendation of the Bureau of Reclamation and the Corps of Engineers that the development be kept above the Imnaha River. This application for a license was denied by the Commission by a decision dated January 20, 1958, and an application for rehearing of the Commission's order was denied on March 20, 1958. On March 31, 1958, and within the term of the preliminary permit, defendant filed a further application for a license for a proposed project on the Middle Snake River. This development proposed for license is described as the HIGH MOUNTAIN SHEEP DEVELOPMENT to be located within the same reach of the Snake River. Public notice of the application was given by the Commission on

October 26, 1958, with the last date to intervene fixed by said notice as December 4, 1959. On February 1, 1960, the Commission fixed March 21, 1960 for hearing on the application.

On March 15, 1960, plaintiff filed its application for a license for a project to be known as the Nez Perce project, to be located in the Middle Snake River at approximately River Mile No. 186. Plaintiff filed a motion to consolidate its proceedings with the proceedings then pending on defendant's application before the Power Commission. Prior to that time plaintiff had not intervened in the original proceeding or given notice of its intent to intervene. A hearing was scheduled before the Commission on March 21, 1960, but was postponed to July 18, 1960. Defendant consented to a consolidation of the proceedings. By stipulation of counsel, at a pretrial conference, it was agreed that the questions of preference and priority were to be reserved for consideration at the close of the hearing. The Commission consolidated the proceedings by order of March 3, 1960. This consolidated hearing was convened in Washington, D. C. on November 4, 1960 and was concluded on September 12, 1961.

On April 24, 1961, plaintiff moved for leave to amend its application for license for project 2273 to include High Mountain Sheep development as an alternative proposal for development in the event the Federal Power Commission did not issue plaintiff a license for its Nez Perce development. This motion was denied by the examiner and the ruling affirmed by the Commission on May 19, 1961. A motion for reconsideration was denied by the Commission on July 20, 1961. On September 12, 1961, after the conclusion of the consolidated hearing, the plaintiff again moved for leave to amend its application for license to include High Mountain Sheep development as an alternative project. This motion is still pending. Briefs have been filed with the Commission by all of the parties and by the Commission staff, but a decision of the presiding examiner, as to which par-

ty, if any, shall be issued a license, has not been made. It is generally agreed that the Mountain Sheep-Pleasant Valley development, the High Mountain Sheep development and the said Nez Perce development are mutually exclusive, that each such development is physically incompatible with the other two developments and that if one of such developments is constructed, neither of the other two developments is feasible. It is conceded that said alternative developments involve substantially the same area of the Snake River. The Nez Perce development, being located below the confluence of the Snake River and the Salmon River, also develops a portion of the Salmon River. The Lower Canyon development of the Salmon River would develop approximately the same head on the Salmon River. The Lower Canyon development is not compatible with the Nez Perce development, but would be feasible and compatible and could be constructed in connection with either the High Mountain Sheep development or the Mountain Sheep-Pleasant Valley development. All of the proposed improvements would develop essentially the same reach and head of the Snake and Salmon Rivers.

While the foregoing is by no means a complete statement of the admitted facts, it will suffice for the purpose of passing on defendant's motion for a summary judgment dismissing the plaintiff's complaint and for declaratory relief as demanded in its answer. It is conceded, for the purposes of this motion, that no genuine issue of any material fact is involved.

Defendant urges, with exceptional vigor and ability, that the court should assume jurisdiction and declare:

(1) that the preliminary permit issued to defendant in 1955 encompassed a field broad enough to include a project which was not specifically described in the permit but which would be physically an alternative to the project so described; and

(2) that the filing of the intermediate application for a license in 1955, which was denied in 1958, did not terminate the term or effect of the preliminary permit.

The order issuing the preliminary permit recited and directed, among other things.[1] It is the position of the plaintiff that the Federal Power Commission, in the proceedings now pending before it, has complete and exclusive jurisdiction to determine the scope and effect of the original permit and of the order in question.

Defendant's counsel, with commendable frankness, concedes that the precise legal problems which he here attempts to present were pending before the Federal Power Commission at the time of the commencement of this litigation and at the time of the filing of defendant's answer. He further concedes that the Commission has full power, jurisdiction and authority to litigate and adjudicate those very questions.

## FEDERAL POWER ACT

It is no longer open to question that Congress, acting within its constitutional powers, may fix and determine the procedures and conditions under which, *and the courts in which,* judicial review of administrative orders may be had, N. L. R. B. v. Cheney California Lumber Co., 327 U.S. 385, 388, 66 S.Ct. 553, 90 L.Ed. 739, and when so acting, the Congress may prescribe the specific, complete and exclusive mode for judicial re-

---

1. * * * * * *
 "As described in the application, the proposed project would consist of two water-power developments designated as Mountain Sheep and Pleasant Valley and described respectively as:
 
 (a) *Mountain Sheep* consisting of a concrete arch dam with a top elevation of approximately 1108 feet (m.s.l.) located at river mile 192.6 in SE¼ Sec. 30, T. 29 N., R. 3 W., B.M., Idaho, and SE¼ Sec. 18, T. 4 N., R. 49 E., W.M., Oregon, creating a reservoir extending about 20.6 miles to the Pleasant Valley site; a powerhouse with provision for installation of 250,000 kilowatts of generating capacity and appurtenant facilities, and
 
 (b) *Pleasant Valley* consisting of a concrete arch dam with a top elevation of approximately 1475 feet (m.s.l.) located at river mile 213.2 in NW¼ Sec. 29, T. 27 N., R 1 W., B.M., Idaho, and SW¼ Sec. 17, T. 2 N., R. 51 E., W.M., Oregon, creating a reservoir extending about 34 miles to Hells Canyon dam site containing about 850,000 acre-feet of storage capacity of which about 300,000 acre-feet will be usable for power, flood control, and other beneficial uses; a powerhouse with provision for installation of 600,000 kilowatts of generating capacity and appurtenant facilities.
 * * * * *
 "Federal plans for development of the two power sites as initially investigated by the Corps of Engineers and the Bureau of Reclamation indicate that the proposed project has engineering feasibility and would provide benefits from power, flood control, navigation and other interests. Since the two developments would be located immediately downstream from the Hells Canyon site, the costs, operations, and characteristics of certain features of the two dams will depend upon the ultimate development of the Snake River at and above the Hells Canyon site. Consequently, the permit should contain a condition requiring cooperative studies with the Corps of Engineers and the Bureau of Reclamation in order to determine the best plan of development.
 * * * * *
 "The Commission *orders:*
 (A) This preliminary permit is issued to Pacific Northwest Power Company, of Portland, Oregon (hereinafter referred to as the Permittee), for a period of three years, effective as of April 1, 1955, for the sole purpose of maintaining priority of application for a license for Project No. 2173 to be located upon navigable waters of the United States and affecting lands of the United States, subject to the terms and conditions of the Act, which is incorporated by reference as a part of this permit, and subject to such rules and regulations as the Commission has issued or prescribed under the provisions of the Act * * *."

view of the Commission's orders. Safe Harbor Water Power Corp. v. Federal Power Commission, 124 F.2d 800, 804 (3 Cir., 1941), cert. den. 316 U.S. 663, 62 S. Ct. 943, 86 L.Ed. 1740. I am of the opinion that Congress, by enacting 16 U.S.C. § 825l(b),[2] has provided a specific, complete and exclusive mode for judicial interpretation and construction of the Commission's orders and the courts in which such construction may be had.

The United States Supreme Court in City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345, construed this section of the Public Power Act and held in line with my conclusions as herein expressed. True enough, the factual background in the Tacoma case is quite different from that with which we are here concerned. However, the construction of the Act and the language of the opinion in that case lead to the inevitable conclusion that the pattern fixed by Congress prohibits the intervention by courts other than in the manner indicated. Of course, the Congress left with the courts the absolute right to intervene on the question of the constitutionality of an Act or order of the Commission. We are not presently concerned with that problem. Before us is a permit issued and an order made within the area envisioned by Congress at the time of the enactment of the legislation. Under the admitted facts in this case the Commission has exclusive jurisdiction of the problems in question.

■ A thorough analysis of cases in point forces me to the conclusion that where Congress has declared an administrative judgment to be first and exclusive, the courts should not anticipate the administrative decision with their own. To do this not only contravenes the will of the Congress, but such action would nullify the congressional objects in providing for an administrative determination. These objects include uniformity of administrative policy, expertness of judgment and finality of determination. Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L. Ed. 1796.

To me, it is crystal clear that many practical problems must be resolved before making a determination of the precise scope and extent of the preliminary permit and in this study it would seem to be good sense to enlist the support of the expert advice of those connected with the Federal Power Commission. California Ass'n of Employers v. Building and Construction Trades Council of Reno, etc., 178 F.2d 175 (9 Cir. 1949) and Babcock v. Koepke, et al., 175 F.2d 923 (9 Cir., 1949) emphasize the same rule. The

2. 16 U.S.C. § 825l(b)

"* * * (b)· Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. * * * Upon the filing of such petition such court shall *have jurisdiction*, which upon the filing of the record with it shall *be exclusive*, to affirm, modify, o· set aside such order in whole or in part. * * * The finding of the Commission as to the facts, if supported by substantial evidence, *shall be conclusive*. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. * * * The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 346 and 347 of Title 28."

field to be exploited and governed by the Commission was definitely fixed and determined by Congress and that field should not be invaded, directly or indirectly, by the courts, unless some constitutional question arises.

## DOCTRINE OF "PRIMARY JURISDICTION"

■ It seems to me that the courts, in failing to distinguish "Primary Jurisdiction" from the doctrine of "Exhaustion of Administrative Remedies," have left the law on these subjects in a state of confusion. A number of well-reasoned decisions have pointed up the distinction with admirable preciseness, while others, decided at a later date, have completely ignored the distinction.

Primary Jurisdiction has nothing whatsoever to do with a judicial review of administrative action. The doctrine is invoked for the purpose of deciding whether the court or the agency should make the initial decision. The Primary Jurisdiction doctrine is only applicable where the claim is one over which the courts have jurisdiction and is brought into play whenever the determination of issues has been placed within the special competence of an administrative body. It is clear that the doctrine does not necessarily apportion jurisdiction between the courts and the agency. It creates a device for arriving at a proper conclusion on whether the court or the agency should initially decide the particular issue and does not concern itself with whether the court or the agency will finally decide the issue. The parties concede that even though the Commission has Primary Jurisdiction, the Court of Appeals may eventually set aside or modify any order which may be made by the Commission. The principal reason behind the doctrine is the practical recognition of the necessity for a systematic coordination of the works of agencies and of courts. It has been said that a court should not act upon a subject matter that is peculiarly within an agency's specialized field without taking into account the obvious advantages which the agency has to offer. Other-

wise, litigants may be damaged by uncoordinated and conflicting decisions. Far East Conference v. United States, 342 U.S. 570, 575, 72 S.Ct. 492, 96 L.Ed. 576. Again, it is said that the doctrine is a method of preparing the way for a more informed and precise determination by a court, if carried that far, of the scope and meaning of the permit and order as applied to the particular circumstances. Federal Maritime Board v. Isbrandtsen Co., Inc., 356 U.S. 481, 498–499, 78 S.Ct. 851, 2 L.Ed.2d 926.

Counsel for defendant places considerable reliance on Great Northern Railway Co. v. Merchants Elevator Co., (1922) 259 U.S. 285, 42 S.Ct. 477, 66 L. Ed. 943. I have no difficulty distinguishing that case from the one at bar. (1) The statute under which the tariff was fixed in the Great Northern case bears no resemblance to § 313 of the Federal Power Act, with which we are here concerned. (2) The order fixing the tariff in Great Northern was final. Here, the permit is only temporary and no action is final until the Commission has or has not issued a license. True enough, the court in Great Northern stated that the doctrine of "Primary Jurisdiction" applied only to *questions of fact* and questions requiring the skills of administrative specialists; in oral argument, however, counsel conceded that administrative agencies, as well as the courts, have broad jurisdiction to interpret and construe the provisions of the statutes under which they are organized and similar jurisdiction to interpret and construe its orders, licenses and permits. The decisions uniformly support these propositions. (3) Great Northern involved litigation between a party to the original administrative proceeding and a third party. At the time of the institution of the court proceedings, the administrative proceeding had been closed and the tariff fixed. There is no doubt that a court would have jurisdiction to proceed to grant relief under the order fixing the tariff.

Great Northern is still a leading authority on its own limited background

and has been cited with approval as recently as United States v. Radio Corporation of America, (1959) 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354; Pan-American Petroleum Corporation v. Superior Court of Del., etc., (1961) 366 U.S. 656, 665, 81 S.Ct. 1303, 6 L.Ed.2d 584. Neither Radio Corporation of America nor Pan-American is of any assistance in arriving at a solution of the pending problem. Pan-American turned on the fact that the action before the court was a traditional common law claim arising under state law, rather than federal law. The claim was not asserted or claimed under a federal statute or regulation.

The logic of the doctrine of Primary Jurisdiction is not that an agency's expertise makes it superior to a court, but that a court confronted with problems within an agency's area of specialization should take advantage of whatever contribution the agency can make to a solution of those problems.

Many of the cases cited by defendant, including, but not limited to, United States v. Western Pacific Railway Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126; Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Far East Conference v. United States, supra; and Southwestern Sugar & Molasses Co., Inc. v. River Terminals Corp., 360 U.S. 411, 79 S.Ct. 1210, 3 L.Ed.2d 1334, simply do not support the defendant's theory on Primary Jurisdiction. Each of those cases, and others, refused jurisdiction and commanded recourse to the administrative agency and compliance with the statutory provisions with reference to the method of review. An analysis of these and other cases on the same subject cited by defendant would add nothing to the validity of my conclusions. It is of particular significance that none of the cases cited by defendant requires a construction of the section of the Federal Power Act with which we are here concerned, nor, from my examination, do any of these cases concern the construction of a statute bearing even a slight resemblance to the exclusionary jurisdictional features of the statute here under construction. It seems to me that this is a case where the specialized competence of the Commission, in the highly complicated area of the development of public and private power, would be an invaluable aid.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

A simple statement of this doctrine is that judicial relief must be denied until administrative remedies have been exhausted. The application of the doctrine is much more difficult and its employment by the courts has caused considerable confusion. It is not to be confused with the requirement of "ripeness for review." It is said that the "ripeness" focus is upon the nature of the judicial process, i. e. the types of functions the courts should perform, and the "exhaustion" focus is upon the relatively narrow question of whether a party should be required to pursue an administrative remedy before going to court.

Defendant urges that the doctrine of exhaustion has no application to our factual background. It urges that the doctrine is applicable in only two classes of cases: (1) where agency action is pending in which the agency proposed to impose a penalty, regulation or other stricture on a party, the party challenges the constitutionality of the underlying statute, the interpretation of the underlying statute as applied to the facts before the agency, or the agency's jurisdiction over the party, in which, generally speaking, the relief requested is an injunction of further agency action; and (2) where a party to an agency action enters the court to seek the review of an interlocutory order of the agency.

I do not feel that the doctrine is limited to the classes of cases mentioned by defendant. Cases such as Franklin v. Jonco Aircraft Corp., 346 U.S. 868, 74 S.Ct. 126, 98 L.Ed. 378; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Petroleum Exploration, Inc. v. Public Services Commission, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294, cited by defendant do not support its posi-

tion that the doctrine of exhaustion is not here applicable. In each one of those cases the court directed compliance with the statutory procedures outlined for review of the agency's decision.

Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933, employed by defendant, holds that it would be premature for a court to rule upon certain questions dealing with the interpretation and constitutionality of a statute until after the required administrative procedures had been exhausted. A three-judge District Court, convened pursuant to 28 U.S.C. § 2282, assumed jurisdiction and granted an interlocutory injunction against further action in an administrative proceeding. The Supreme Court upheld the validity of the pending administrative proceeding and reversed the judgment of the District Court. *There is no question here* as to the validity of the administrative proceeding before the Federal Power Commission. Allen and Illinois Commerce Commission v. Thomson, 318 U.S. 675, 63 S.Ct. 834, 87 L.Ed. 1075, and similar cases, lend no aid to defendant's theory.

Even though a final order granting a license was presented in this case, I feel that the doctrine of exhaustion of administrative remedies would be applicable under the specific direction of the Federal Power Act. All of the cases cited by the respective parties have received my consideration. An analysis of each of those cases would add nothing to the force or effect of this opinion. Most of them follow well settled principles of law. Others confuse the doctrines of "Primary Jurisdiction," "Exhaustion of Administrative Remedies" and "Ripeness for Review." Others, such as the Tacoma case,

properly interpret the particular section of the Federal Power Act as requiring an exhaustion of remedies under the Act before judicial review, and then a review by the Court of Appeals to the exclusion of other courts. The statute and its interpretation in Tacoma control my decision.

 I conclude that:.

(1) On the issues before the court, 16 U.S.C. § 825*l*(b), as construed in Tacoma, lodges full and complete jurisdiction in the Federal Power Commission, subject only to review by the Court of Appeals. This calls into play a limited application of the doctrines of "Primary Jurisdiction" and "Exhaustion of Administrative Remedies."

(2) Aside from the application of the particular statute, I hold that under the facts of this case the doctrine of "Primary Jurisdiction" is applicable and that the expertise of the Commission would be helpful in arriving at a proper interpretation of the temporary permit and the order in question.

(3) Likewise, I hold that the general doctrine of "Exhaustion of Administrative Remedies" is applicable and that, at this stage of the proceeding, a judicial action to interpret the scope and effect of the temporary permit or of the order is not required.

In view of the conclusions herein expressed, neither of defendant's affirmative defenses states a defense or a claim on which relief can be granted and such defenses should be dismissed. Defendant's motion for a summary judgment is denied. An appropriate order may be prepared and presented by counsel for plaintiff.

Other motions now pending will be assigned a date for argument.