**WASHINGTON PUBLIC POWER SUP-
PLY SYSTEM, a municipal corpo-
ration, Plaintiff,**

v.

**PACIFIC NORTHWEST POWER COM-
PANY, a corporation, Defendant.**

**Civ. No. 62–110.**

United States District Court
D. Oregon.

March 18, 1963.

Petition for Reconsideration Denied
May 15, 1963.

Norman A. Stoll, of Reinhardt, Coblens & Stoll, Portland, Or., and Jack R. Cluck, of Houghton, Cluck, Coughlin & Schubat, Seattle, Wash., for plaintiff.

Hugh Smith and Allan A. Smith, of Smith, Gray & Rodgers, Portland, Or., for defendant.

KILKENNY, District Judge.

This is an action for a Declaratory Judgment, in which each party asks for a Summary Judgment. The plaintiff asks that the court adjudicate and declare:

1. That subject to the requirements of the Federal Power Act (Title 16 U.S. C.A. Ch. 12) the plaintiff is authorized under the laws of the State of Washington, particularly RCW Ch. 43.52, to construct either the Nez Perce or High Mountain Sheep Project, each of which is more particularly described in Exhibit A attached to plaintiff's complaint.

2. That the Federal Power Act authorizes the Federal Power Commission (FPC) to issue a license to the plaintiff herein for the construction of either project and to grant the plaintiff herein authorization for such construction independently of any state statutes.

3. That any statute of Washington, Oregon or Idaho relating to such matters as the diversion and use of water, the issuance of any certificate of public convenience and necessity or the acquisition of any property necessary for the construction of either of the projects mentioned is superseded by the Federal Power Act to the extent that any such state statute is inconsistent with the full exercise, by plaintiff herein, of any license which is issued to it by the FPC on either of such projects.

Defendant filed a Motion for Summary Judgment which raises essentially the same questions. The Motions are based on the records and files and certain Affidavits. All of the facts required for a determination of the Motions are admitted, and, in large measure, those facts are set forth in my previous Opinion, on the sufficiency of defendant's contentions, D.C., 213 F.Supp. 404. Nevertheless, I feel that another statement might clarify the issues raised by the present Motions.

The Washington Public Power Supply System (Plaintiff) was created pursuant to order of January 31, 1957 by the Department of Conservation and Development of the State of Washington and, under the laws of the State of Washing-

ton (RCW 42.53.360), is a corporation, described as a municipal corporation, and, also described as a joint operating agency, for the purpose of acquiring, constructing and operating electric generating and transmission facilities.

The Pacific Northwest Power Company (Defendant) is a corporation organized under the laws of the State of Oregon and qualified to do business in the states of Oregon, Idaho, Washington and Montana. On March 31, 1958 the defendant filed with the Federal Power Commission an application for a license to build a hydroelectric project entitled the Middle Snake River Project. The license application described the High Mountain Sheep Development, the Lower Canyon Development, and the Nez Perce Development as alternative developments that might constitute the Middle Snake River Project, and the license application requested a license for the High Mountain Sheep Development. The defendant proposes to sell the entire output of the project, for which it is licensed by the Federal Power Commission, to four sponsoring utilities. The application of the defendant was duly noticed by the Federal Power Commission, and a hearing was scheduled to commence before the Commission on March 21, 1960.

On March 15, 1960 the plaintiff filed an application for a license with the Federal Power Commission for the Nez Perce Project, to be located on the Snake River in the states of Oregon and Idaho, about three miles below the proposed site of the High Mountain Sheep site, and a project which is mutually exclusive of the High Mountain Sheep Project. At the time of filing the application for the Nez Perce Project, the plaintiff had not filed with the Director of Conservation and Development of the State of Washington application to add additional projects to its list of authorized projects. The plaintiff had not, at that time, nor has it since, filed an application with the State of Idaho for any permit to appropriate water of the State of Idaho. The plaintiff stated in its application that it intended to file an application for license with the Hydroelectric Commission of Oregon under the Oregon Hydroelectric Act, but in a subsequent amendment to the application the plaintiff took the position that no such application was required, and did not and has not since that date filed an application under the Oregon Hydroelectric Act. The plaintiff has not qualified to do business in the States of Oregon or Idaho, nor has it made application for such qualification.

After the Federal Power Commission had consolidated the proceedings on the applications of the plaintiff and defendant, and after several postponements at the request of the plaintiff, a hearing was opened before the Federal Power Commission Hearing Examiner on November 4, 1960. It was finally closed on September 12, 1961. On April 24, 1961 the plaintiff filed a motion with the Presiding Examiner for leave to amend its application so as to include the High Mountain Sheep Project as an alternative project to Nez Perce. This motion was denied by the Examiner, the ruling was affirmed by the Commission, the motion was renewed at the close of the hearing in September, 1961 and the motion has been denied by the Presiding Examiner in his Order granting license for High Mountain Sheep to Pacific Northwest Power Company. Subsequent to filing said Motion for leave to amend to include the High Mountain Sheep Project, the plaintiff, on May 10, 1961 applied to the Director of Conservation and Development of the State of Washington for an order authorizing the undertaking of the Nez Perce and High Mountain Sheep Projects, pursuant to the applicable provisions of the Laws of Washington. The defendant, together with two of its organizing companies, who are electric utilities operating in the State of Washington, namely, The Washington Water Power Company and Pacific Power & Light Company, intervened in the proceedings before the Director to oppose the application. The application was granted by Order of the Director dated July 7, 1961 and was appealed by the

defendant and its two organizing companies. The Order was affirmed.

Defendant feels that the real issues in the case, as shown by the record, encompass a field somewhat greater than envisioned by plaintiff.[1] I do not feel there is a material variance between the issues claimed by plaintiff and those claimed by defendant, and will adopt those presented by plaintiff as decisive of the legal questions here involved.

## AUTHORITY OF PLAINTIFF TO CONSTRUCT EITHER NEZ PERCE OR HIGH MOUNTAIN SHEEP PROJECT

Prior to 1957 the plaintiff's powers and authority were lodged in the Washington State Power Commission, a State Agency composed of persons appointed by the Governor of that state under Chapter 227, Laws of Washington, 1949. In 1957, this Commission was abolished (Chapter 295, Section 8, Laws 1957) and the powers and authority of the Commission were thereby conferred on plaintiff. The conferring statute provided, among other things:

"In addition to the power and authority granted in this Chapter to an operating agency it shall also have all power and authority heretofore granted, and shall be subject to all of the duties imposed upon the Washington State Power Commission. * * *"[2]

Among the powers being exercised by the Commission there were those specifically mentioned in the Declaration of Policy.[3]

The provisions of the Washington Statutes, in pertinent part, which must

---

[1]. Issues submitted by defendant:

1. Do the statutes of the State of Washington grant power and authority to a joint operating agency to construct in its own name a project outside the boundaries of the State of Washington, developing resources other than those of the State of Washington and thereafter carry on the business of generating and transmitting electric power and energy to electric utilities, agencies and industries outside the State of Washington?

2. Do the statutes of the State of Washington grant lawful authority to a joint operating agency to impair or supersede rights of a corporation qualified to do business in Washington?

3. Do the laws and statutes of the states of Oregon and Idaho provide for the qualification of a foreign municipal corporation to undertake the business of construction and operation in these states of a major generating and transmitting business?

4. Do the laws and statutes of the states of Oregon and Idaho provide for the grant of water rights to a foreign municipal corporation for a project such as here proposed?

5. Does Idaho Code 61–327, which prevents the transfer to a foreign municipal corporation of title to property to be used for generation of transmission, prevent the plaintiff herein from undertaking the project proposed?

6. If the answer to any of the first four questions be in the negative or the fifth be in the affirmative, would the issuance to the plaintiff of a license under the Federal Power Act grant to plaintiff corporate and legal authority not granted by the several state laws?

[2]. RCW 43.52.391.

[3]. RCW (Cum.Supp.) 43.52.260

"43.52.260 Declaration of policy—General duties of commission—Scope of authority. *It is the intent of this act* [1955 c 258] *and this chapter that the commission shall represent the state of Washington and aid and assist the public utilities therein* to the end that its water resources and other resources shall be properly developed for the best public interest insofar as they affect electric power, and to this end (1) *the commission shall develop and integrate such resources* as necessary whenever public utilities other than those owned by the United States and its agencies are not in a position so to do, and (2) *the commission shall join with Canada, the United States, the states thereof, and their agencies to develop and integrate the water resources and other resources of the region, and particularly that area incorporated within the watershed of the Columbia River and its tributaries.*

"The authority granted in this chapter shall apply equally to the generating of electricity by water power, by steam power, by atomic power or by any other means whatsoever." (Laws 1955, Chapter 258).

be construed in order to determine the powers granted by the Washington Legislature when the legislation was enacted in 1953 are as follows:

(Laws 1953, Chapter 281)

(Revised Code of Washington citations in margin)

"SEC. 5. The commission shall have authority:

RCW 43.52.300(1) "(a) To generate, produce, transmit, deliver, exchange, purchase or sell electric energy and to enter into contracts for any or all of such purposes.

RCW 43.52.300(2) "(b) To construct, condemn, purchase, lease, acquire, add to, extend, maintain, improve, operate, develop and regulate plants, works and facilities for the generation and/or transmission of electric energy and to take, condemn, purchase, lease and acquire any real or personal, public or private property, franchise and property rights, including but not limited to state, county and school lands and properties, for any of the purposes herein set forth and for any facilities or works necessary or convenient for use in the construction, maintenance or operation of any such works, plants and facilities; provided that the commission shall not be authorized to acquire by condemnation any plants, works and facilities owned and operated by any city or district, or by a privately owned public utility. The commission shall be authorized to contract for and to acquire by lease or purchase from the United States or any of its agencies, any plants, works or facilities for the generation and transmission of electricity and any real or personal property necessary or convenient for use in connection therewith.

RCW 43.52.300(3) "(c) To negotiate and enter into contracts or compacts with the United States or any of its agencies, with any state or its agencies, with Canada or its agencies or with any district or city of this state, for the lease, purchase, construction, extension, betterment, acquisition, operation and maintenance of all or any part of any electric generating and transmission plants, works and facilities or rights necessary thereto, either within or without the state of Washington, and for the marketing of the energy produced therefrom. Such negotiations, contracts or compacts shall be carried on and concluded with due regard to the position and laws of the United States in respect to international agreement.

RCW 43.52.300(4) "(d) To negotiate and enter into contracts for the purchase, sale, exchange, transmission or use of electric energy or falling water with any person, firm or corporation, including political subdivisions and agencies of any state, of Canada, or of the United States, at fair and nondiscriminating rates.

RCW 43.52.300(5) "(e) To apply to the appropriate agencies of the state of Washington, the United States or any state thereof, and to Canada and/or to any other proper agency for such permits, licenses or approvals as may be necessary, and to construct, maintain and operate works, plants and facilities in accordance with such licenses or permits, and to obtain, hold and use such licenses and permits in the same manner as any other person or operating unit.

\* \* \* \* \* \* \*

RCW 43.52.300(9) "(i) To construct, operate and maintain channels, locks, canals and other navigational, reclamation, flood control and fisheries facilities as may be necessary or incidental to the construction of any electric generating project, and to enter into agreements and contracts with any person, firm or corporation, including political subdivisions of any state, of Canada or the United States for such construction, operation and maintenance, and for the distribution and payment of the costs thereof."

RCW 43.52.260 SEC. 20 (See Declaration of Policy, Page 6)

The 1953 Act, without significant change, remains the Washington law on the subject.

Considerable of defendant's argument is devoted to an analysis and construction of the provisions of the statutes relating to the Washington State Power Commission as they existed in 1949. The 1953 Act, for all practical purposes, replaced the 1949 Act, and, as I view it, the 1949 Act is of little, if any, help in construing the 1953 Act. Defendant concedes that the Washington Legislature by the replacement Act in 1953 intended to make some change in the then existing law. However, it contends that the Legislature in 1953 intended to clarify, rather than to expand, the extra-territorial powers of the Commission. Any intelligent comparison of the 1953 legislation with that of 1949 will conclusively demonstrate that the 1949 Act was in part repealed and in part completely revised and will lead to the inescapable conclusion that some expansion of powers was intended. Did this expansion of powers encompass a field which will permit the plaintiff to act, independently of others, outside the State of Washington? That

is the issue to be decided. One of the most meaningful changes, was to include in the 1953 legislation specific language which pertained to *contracts with the United States and the states and agencies thereof*. The language *"within and without the State of Washington"* was used in the 1953 legislation, while no comparative language was used in the 1949 Act. Other important differences are evident on an even casual analysis of the two Acts. The monumental and rapidly accelerating growth of public and private hydroelectric power in the Pacific Northwest, and in particular in the Snake River region, is something which the Court cannot ignore in exploring the intention of the Washington Legislature when it concluded to enact the legislation. Returning to the declaration of policy, the duties of the Commission and the scope of authority as stated in 43.52.260, we find that the Commission is directed to represent the State of Washington and to join with Canada, the United States and the states thereof in an effort to develop and integrate the water resources and other resources of the region. Included in the command is a

direction to the Commission to use its powers and authority in all of the area incorporated within the watershed of the Columbia River and its tributaries.

■ Plaintiff is a municipal corporation of the State of Washington, RCW 42.52.360. A municipal corporation is limited to those powers expressly granted or necessarily implied and if there is doubt the claimed grant of power must be denied. Pacific First Federal Savings & Loan Association v. Pierce County, 27 Wash.2d 347, 178 P.2d 351 (1947).

The "doubt rule" is recognized and followed in City of Los Angeles v. Gurdane, et al., 59 F.2d 161 (9 Cir. 1932); Valentine v. Robertson, 300 F. 521 (9 Cir. 1924).

Keeping this and other rules of construction in mind, we now approach the pertinent provisions of the 1953 Act to determine whether the plaintiff alone may construct the Dams in question. Subsection (a), now subsection (1), RCW 43.52.300 is nothing more than a statutory declaration of the general purposes of the Commission.

■ Subsection (2) is the grant of power and authority to, among other things, *construct* hydroelectric projects and transmission systems. This legislation specifically authorizes the Commission "to construct" plants, works and facilities for the generation and/or transmission of electrical energy. No mention is made of whether these powers are to be exercised within or without the state. Obviously, there was no necessity to specifically mention a right to *construct* within the state. Did the Washington Legislature intend by this subsection to authorize the Commission to construct a plant outside of the state? A municipality's right to exercise a power to go outside its limits must be specifically delegated or necessarily implied by the legislation creating the power. McQuillen, Municipal Corporation (3rd ed.), Volume 2, Section 10.07, p. 590. There is nothing in this subsection to indicate an intention on the part of the Washington Legislature to authorize the Commission to construct its own hydroelectric projects outside of the State of Washington. Plaintiff, on occasions, argues that there must be an express limitation on the powers to do business outside of its limits. With this argument I cannot agree. There is no language in this subsection which would permit plaintiff to construct the projects in question. Certainly, the implication of a grant of power does not present itself in the language of this subsection.

The most important language of the entire Act, in my opinion, is that set forth in subsection(c).

Here, for the first time, the Legislature made the grant of power, in express terms, which permitted the doing of certain things "within or *without* the State of Washington". Truly, this is a very significant and important phrase, being used, as it is, immediately after the grant of powers "*to construct*" in subsection (b). It has been forcibly argued that the use of this language in (c) clearly demonstrates that the Washington Legislature was fully conscious of the statutory problem of providing by clear and unequivocal language for the exercise of powers of a state agency when the legislative group desired those powers to be exercised beyond the boundaries of the state. The use of this language rather clearly shows that the Washington Legislature recognized the problem and demonstrated that it knew how to deal with it. The very fact that the Legislature used the language "without the state" in subsection (c) and did not use it in subsection (b) indicates beyond question an intention to withhold that power insofar as the exercise of the powers of subsection (b) were concerned. On its face, the language of subsection (c) authorizes the plaintiff to *negotiate and enter into contracts* with the United States or with other states or Canada or the agencies thereof with regard to the construction, operation and maintenance of plants and transmission facilities. The Legislature granted plaintiff these extensive powers to act outside of the state. But did those powers, as enu-

merated in this section, include the right to construct, in its own name, plants and other facilities outside the State of Washington? Plaintiff argues it would be nonsensical for the Legislature to permit the Commission to enter into contracts for construction and for purchase of these facilities outside of the State of Washington with other states or agencies and not permit out of state construction by the Commission. Such legislation, in my opinion, might display good common sense. We must keep in mind that in 1953 there was nationwide political debate and comment on "partnership" projects in the development of public power. The Washington Legislature may well have recognized the complex problems that might face a municipal corporation trying to operate on its own in a foreign jurisdiction and may well have felt that considerable of this difficulty would be alleviated if the Power Commission was merely authorized to enter into contracts with the other states or agencies with reference to the construction of the projects. In that way the Commission might well overcome any problem with which it might be faced in reference to securing the proper licenses to do business in the foreign jurisdictions. In any event, I feel that this subsection of the statute is clear and that it is not up to me to find a reason for the language used. The fact that the Legislature saw fit to specifically authorize the Commission to enter into these contracts outside of the state is a rather clear indication that the Legislature did not intend that the Commission should "go it alone" on foreign soil. Expressio Unius Est Exclusio Alterius, Bradley v. Department of Labor & Industry, 52 Wash.2d 780, 329 P.2d 196, (1958). If the Legislature intended to permit the Commission to construct outside the state, how simple it would have been to insert this same language in (b).

Section 20 of the 1953 Act, when construed with subsections (b) and (c) of Section 5, conclusively demonstrates that the Washington Legislature intended to carefully distinguish between the powers granted in each of the subdivisions. In Section 20, the Washington Legislature quite carefully distinguishes between the water and other resources *of the State of Washington* and the water and other resources *of the region*, particularly that area incorporated within the watershed of the Columbia River and its tributaries. Insofar as the water and other resources of the state of Washington was concerned, it was the declared intent of the Act that the Commission should properly develop those resources. Insofar as the water and other resources of the region was concerned, it was the declared intention that the Commission should *join with* Canada, the United States and the states thereof and their agencies to develop such resources. These precise distinctions carried through from Section 5(b) and (c) to Section 20 cannot be the result of an indiscriminate and purposeless use of words and phrases. On the other hand, the precise and meaningful distinction between the resources of the State of Washington and the resources of the region make completely manifest the intention of the Legislature to permit the Commission to assist in development of the region only in those instances when joined with the United States, Canada, the other states or their agencies. Plaintiff's argument that the resources of the State of Washingon are also the resources of the region is sound, but of no significance. With reference to the resources of Washington, the Commission was given full and complete power to construct hydroelectric or other projects. With reference to the resources of the region, it was directed to work with the other states, the United States and Canada. By that, I do not mean that the Commission was precluded from working with the other states, the United States and Canada in connection with the resources of Washington. It might do so if it pleased. That the two sections should be construed together in order to arrive at the true intent of the Legislature is hornbook law. City of Tacoma v. Cavanaugh, 45 Wash.2d 500, 275 P.2d 933; DeGrief v. City of Seattle, 50 Wash.

2d 1, 297 P.2d 940; Miller v. City of Pasco, 50 Wash.2d 229, 310 P.2d 863; In re Brackens Estate, 56 Wash.2d 17, 351 P.2d 151. In construing a statute in derogation of the common law there should be no greater departure from such law than the statute expressly, or by necessary implication, permits. Allen v. Griffin, 132 Wash. 466, 232 P. 363; Post v. Fischer, 191 Wash. 577, 71 P.2d 659; Green Mountain School District No. 103 v. Durkee, 56 Wash.2d 154, 351 P.2d 525.

■ Plaintiff attempts to overcome the impact of the clear language of Section 5, subdivisions (b) and (c) and Section 20 by invoking the language of other subdivisions of Section 5. This invocation, of course, is perfectly proper but I do not believe that the language in the other subdivisions leads to the conclusions urged by plaintiff. It is apparent that the Commission was granted substantial extra-territorial powers. Plaintiff urges that subdivision (e) throws some light on the intention of the Legislature. This subsection gives authority to the Commission to apply to the appropriate agencies of the State of Washington, the United States or any state thereof for such permits, licenses or approvals as might be necessary and to *construct*, maintain and operate plants, works and facilities in accordance with such licenses or permits. From this language plaintiff arrives at the conclusion that the Legislature intended either an express or an implied grant of authority to the Commission to construct, on its own, outside the territorial limits of the State of Washington. The literal interpretation of a phrase used in an Act should not be permitted to prevail, where such an interpretation is repugnant to the intent of the Legislature as plainly manifested by the Act when taken as a whole. Cory v. Nethery, 19 Wash.2d 326, 142 P.2d 488.

■ To interpret subdivision (e) as giving the Commission out of state power to construct, after that authority has been withheld in subdivisions (b) and (c) would amount to nothing short ·of judicial legislation. Subdivision (e), in my opinion, merely implements the powers in subdivisions (b) and (c) by specifically empowering the Commission to make application for the necessary permits and licenses.

■ Plaintiff urges that the language of subsection (i) of Section 5 clearly demonstrates an intention to permit the plaintiff to construct projects outside of the state. I am of the opinion that the construction authorized in subdivision (i) is merely in connection with flood control and fisheries, facilities that might be necessary or incidental to the construction of an electric generating project as those projects are defined in subdivisions (b) and (c). To construe this language as an authorization to construct outside of the state would be to permit by indirection, that which the Legislature withheld in subsections (b) and (c). This subdivision again illustrates the clear cut policy of the Washington Legislature to distinguish between those projects which might be located in the state and those located outside the state. On those outside of the state, the Commission was limited in authority "to enter into agreements and contracts with any person, firm or corporation, including political subdivisions of any state, of Canada, or the United States for such construction, operation and maintenance and for the distribution and payment of costs thereof." The distinction between construction within the state and construction without the state is carefully followed in this subdivision. Again, the Washington Legislature limits the out of state powers of the Commission to joint contracts or operations with the states, Canada, or the United States.

■ Likewise, plaintiff calls attention to the relevancy and materiality of the language of subdivision (d) of Section 5 in arriving at a proper construction of the 1953 Act. This subdivision authorizes contracts for the purchase, sale, exchange, transmission or use of electric energy or falling water with any person, firm or corporation, including political subdivisions and agencies of any state, of Canada, or of the United States.

This subsection is fully consistent with a legislative intent to limit the Commission's extra-territorial powers to the contracts listed in subdivision (c).

 I have carefully considered the other arguments made by counsel for both plaintiff and defendant on their beliefs in a proper construction of the 1953 Act. I did not find such arguments or suggestions of any particular benefit. In my approach, I have tried to place myself in the position of the Washington Legislature and then decide what was meant by the language used. My analysis leads me to the conclusion that the Washington Legislature never intended that the Commission, the plaintiff's predecessor, should be permitted to "go it alone" in the construction of hydroelectric projects outside of the State of Washington. That the Legislature knew how to grant such authority is clearly demonstrated by the language "within or without the State of Washington" as used in subdivision (c). The fact that this language was withheld from subdivision (b), the general grant of power to construct, convinces me that no such authority was intended on outside construction. The Washington Legislature was presumed to know the principles of statutory construction. State ex rel. Gebhardt v. Superior Court for King County, 15 Wash.2d 673, 131 P.2d 943.

Moreover, the basic legislative concept of making a distinction between those powers to be exercised *in the state* and those powers to be exercised *in the region*, is clearly recognized in the statements of purposes in the 1955 and 1957 legislation on the same subject.

Plaintiff, as an alternative, argues that the powers of the Public Utilities Districts conferred on plaintiff by the 1957 Act were sufficient, in themselves, to authorize plaintiff to go outside the State of Washington and construct these projects. The Act provided, among other things:

"Except as otherwise provided in this section, a joint operating agency shall have all powers now or hereafter granted public utility districts under the laws of this state." RCW 43.52.391.

A PUD is given express authority to construct power projects "within or without its limits." The particular language is used in many sections of the PUD Code, for example, RCW 54.16.040 which reads:

"54.16.040 Electric energy. A district may purchase, *within or without its limits*, electric current for sale and distribution *within or without its limits*, and construct, condemn and purchase, purchase, acquire, add to, maintain, conduct, and operate works, plants, transmission and distribution lines and facilities for generating electric current, operated either by water power, steam, or other methods, *within or without its limits* for the purpose of furnishing the district, and the inhabitants thereof and any other persons, including public and private corporations, *within or without its limits*, with electric current for all uses * * *."

Other sections of the PUD Law using the same, or similar, language are RCW 54.16.050 and 54.16.010.

Plaintiff argues that similar language was used in the Charter of the City of Walla Walla, which Charter was before the Washington Supreme Court in Langdon v. City of Walla Walla (1920), 112 Wash. 446, 193 P. 1, and that the Washington Court recognized the right of the city to locate a source of water supply in the State of Oregon. The plaintiff would have me apply the reasoning in the Langdon case to the problem now before the Court and declare that plaintiff has full right and authority to construct a hydroelectric plant outside the State of Washington under the PUD Law, even though such authority is lacking under the 1953 Act.

While it is true that the language of the Charter in the Langdon case is similar to the language in the PUD Law, the fact remains that I must look to the construction, by the Courts, of the language in the PUD statutes rather than to the

construction placed on language used in some other municipal law.

In April, 1951 the Superior Court of the State of Washington for Stevens County in the case of Jewett v. Public Utility District No. 1 of Stevens County enjoined PUD from purchasing certain property in the State of Idaho. The Court there held that it was never the intention of the Legislature, in the PUD Law, to authorize utility districts to go outside the State of Washington, buy property in the State of Idaho and operate that property as a District. To be kept in mind is the fact that this case was decided in 1951 and the decision was in full force and effect at the time the 1957 Act was passed by the Washington Legislature. The Superior Court of the State of Washington is a Court of general jurisdiction. Such a court in declaring and applying the State Law is acting as an organ of the State, and its determination, in the absence of a decision by the highest Court in the State, should be followed by a Federal Court in deciding the State question. Fidelity Union Trust Co., et al. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109. My ultimate conclusion must be governed by the law of the State of Washington as declared by the Washington Courts. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and it is my duty to ascertain and apply that law even though it has not been expounded by the highest Court in Washington. Fidelity Union Trust Co., et al. v. Field, supra.

Putting aside the decision of the Jewett case and relying only on cases of the Supreme Court of Washington construing the authority of Districts under the PUD Law, we find that the Supreme Court had prior to 1957, placed a restrictive perimeter around the powers of these Districts which limited the authority to go outside the District to those subjects which were directly connected with what was called the "primary purpose" of the District, which purpose was to furnish the District and its inhabitants with electric current. State ex rel. Public Utility District No. 1 of Skagit County v. Wylie, 28 Wash.2d 113, 182 P.2d 706; Roehl v. Public Utility District No. 1 of Chelan County, 43 Wash.2d 214, 261 P.2d 92; Carstens v. Public Utility District No. 1 of Lincoln County, 8 Wash.2d 136, 111 P.2d 583. The Roehl case does not, as contended by plaintiff, stand for the proposition that a liberal construction should be placed on the powers of public utility districts to act outside of their boundaries. This case specifically adopts the "primary purpose doctrine" stated in Wylie. The detailed powers of the individual public utility districts, as interpreted by the Washington Courts, were in no way inconsistent with or broader than, the limited powers granted to the State Power Commission by the 1953 Act and the reference to the powers of the public utilities district as mentioned in the 1957 Laws does not indicate an intention by the Washington Legislature to in any way change, modify or set aside the fundamental statutory pattern under which joint operating agencies had theretofore been authorized to act. The powers of the public utilities districts must be exercised by the plaintiff only within the limits as outlined by the courts and may not be used to construct massive hydroelectric projects in the States of Oregon and Idaho and thus engage in an activity far above and beyond the "primary purpose" of any utility district.

In my opinion, the Washington Supreme Court, if confronted with the precise problems before me would hold that the plaintiff has no authority, to construct on its own, either one or both, of the planned hydroelectric projects in the states of Oregon and Idaho.

It is neither necessary, nor desirable, that I pass on all the other legal questions presented. My conclusions dispose of most of them. Assuming, however, for the sake of discussion, that plaintiff was authorized to construct, on its own, the projects in question, I would hold that the Federal Power Act is the controlling legislation and that any state statute or other law inconsistent with

492

the free exercise of rights granted under a license from the FPC is, to that extent, superseded by the Federal Legislation. In my opinion, the decisions in First Iowa Hydrolectric Corporation v. Federal Power Commission, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143; State of Washington, Department of Game v. Federal Power Commission, 207 F.2d 391 (9 Cir. 1953); City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958) and Public Utility District No. 1 v. Federal Power Commission, 113 U.S.App.D.C. 363, 308 F.2d 318, (9 Cir. 1962) are applicable to the facts in the case at bar and those cases would govern my decision.

Plaintiff's motion is denied. Defendant's motion, insofar as applicable, is allowed. Request for an injunction is denied without prejudice. Counsel for defendant may draft, serve and submit an appropriate judgment in conformity with this opinion.