The STEAMBOATERS, an Oregon non-profit corporation, and Jim Van Loan, Plaintiffs,

v.

FEDERAL ENERGY REGULATORY COMMISSION and Kenneth Plumb, Secretary; Winchester Water Control District; and Elektra Power Corporation, a California corporation, Defendants.

No. 83–6244–E.

United States District Court, D. Oregon.

June 24, 1983.

Allen L. Johnson, Bill Kloos, Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene, Or., for plaintiffs.

Stephen T. Janik, Ball, Janik & Novack, Portland, Or., R. Keith Guthrie, Van Ness, Feldman, Sutcliffe, Curtis & Levenberg, Washington, D.C., for defendants Elektra Power Corp. and Winchester Water Control Dist.

Joshua Rokach, Asst. Sol. Gen., U.S. Dept. of Justice, Washington, D.C., for defendant F.E.R.C.

## OPINION AND ORDER

JAMES M. BURNS, Chief Judge.

Steamboaters seeks to enjoin the construction of a hydroelectric dam on the North Umpqua River in Douglas County, Oregon. This suit claims jurisdiction on the bases of: a) Federal question, 28 U.S.C. § 1331; b) Administrative Procedure Act, 5 U.S.C. §§ 701–706; and c) Declaratory Judgments Act, 28 U.S.C. §§ 2201–02. At the core of the case, however, is a NEPA claim, 42 U.S.C. §§ 4321–47.

To rule in favor of Steamboaters, I would necessarily have to review the various substantive and procedural errors charged by Plaintiff against the Federal Energy Regulatory Commission (FERC) in its action which approved the hydropower project. However, I do not have the authority to review agency decisions under the Federal Power Act. The Act vests exclusive jurisdiction in the courts of appeals, 16 U.S.C. § 825*l*(b). Therefore, Steamboaters' motion for a preliminary injunction is denied and the case will be dismissed.[1]

---

**1.** I have added this footnote to the published version of this Opinion.

Steamboaters filed their complaint for injunctive and declaratory relief on June 6, 1983. On June 10th, Steamboaters requested an order temporarily restraining construction of the hydropower project. Following a hearing on June 15th, Judge Belloni denied the motion for a TRO.

At that point, I entered the proceedings. The preliminary injunction hearing was scheduled for June 23rd.

On June 16th, I met informally with counsel to sort out the parties' respective positions. On June 17th, I held a conference call with counsel at which I said that I had grave doubts about my authority to act in these proceedings but that I would continue in them as long as my involvement could help resolve the dispute.

I will withhold entry of judgment for the time being solely for the purpose of having a file if the court of appeals should require me to act as a special master in some way in the proceedings which have now been filed in the Ninth Circuit as of June 20, 1983. To that end, the June 23, 1983 hearing will remain as scheduled. If the court of appeals has not ruled on Steamboaters' emergency motion for the appointment of a special master by the close of business on June 22nd, any hearing which I might otherwise hold will necessarily have to be on or after July 5, 1983.

Elektra Power Corporation plans to build the hydropower project for the Winchester Water Control District, which owns the existing dam. They applied to FERC for permission to build the hydropower project.

Steamboaters is a group of persons who fish on the North Umpqua. Steamboaters attempted to intervene in the FERC proceedings along with the Oregon Department of Fish and Wildlife and the National Marine Fisheries Service. These entities were concerned about the hydropower project's effect on the salmon, steelhead, and cutthroat runs. FERC initially granted the groups intervenor, *i.e.,* party, status. Elektra and Winchester incorporated the State's fisheries guidelines into the project.

FERC ruled the hydropower project would not have a significant impact on the human environment. The project was, therefore, exempt from NEPA requirements, including an environmental impact statement. This gave the project the green light.

FERC rescinded Steamboaters' intervenor status. FERC granted National Marine's request for a rehearing but National Marine has not asked FERC to stay construction pending reconsideration of its decision. Steamboaters has petitioned FERC for a stay but apparently, perhaps, must first convince FERC to reconsider the decision rescinding its intervenor status.

The commission is entirely able to enter a stay if circumstances warrant.[2] And the court of appeals, now that the ball is in its court, surely has authority under the All Writs Act, 28 U.S.C. § 1651, to grant an appropriate stay if it believes the circumstances so warrant.

Section 825*l* allows parties to seek review of final FERC decisions in the courts of appeals. But FERC's decision on the North Umpqua project is not a final decision because the commission has scheduled a rehearing, or is considering requests for a stay. Since Steamboaters is not presently a party to the FERC proceedings, it argues that it may not now be able to avail itself of the statutory review procedures.

Steamboaters argues that the district court should fill in what it perceives as a jurisdictional "gap." That Steamboaters falls through the cracks of the statutory review procedures does not mean that the district court gets to hear the case. *City of Rochester v. Bond,* 603 F.2d 927, 937–38 (D.C.Cir.1979).

At the June 17th conference, Steamboaters' counsel announced that they had asked FERC to stay the project pending rehearing on the rescission of Steamboaters' intervenor status. Steamboaters also forwarded that day to the court of appeals an emergency motion for a stay of construction pending review in that court. Because FERC's counsel had not yet seen Steamboaters' request for a stay, I adjourned the proceedings until the following Monday, June 20th.

On June 20th and 21st, I again moderated conference calls in which counsel attempted to arrive at a construction schedule that all could accept. By the end of the conference on the 21st, it became clear that the parties were at an impasse and that my presence was no longer needed in the proceedings. With a lengthy and costly hearing looming on the horizon, I announced this ruling.

The speed with which these events unfolded did not leave enough time for me to prepare an opinion, the organization, (and perhaps even the grammar and syntax) of which would merit publication. Nonetheless, I am publishing this opinion only because there appears to be, as yet, no Ninth Circuit authority dealing with the "exclusive" aspects of review under the Federal Power Act.

2. After this opinion was prepared, FERC stayed all of Elektra's activities that would have a significant adverse effect on the fish runs. The court of appeals then denied Steamboaters' emergency motion for a stay of construction.

Congress did not intend to create a "system of bifurcated jurisdiction" with parties filing in the courts of appeals and non-parties filing in the district courts, only to have the district court decisions appealed to the courts of appeals. *Cf. National Wildlife Federation v. Johnson,* 548 F.Supp. 708, 710 (D.Or.1982) (Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. §§ 839 *et seq.*).

For a fuller discussion of the narrow and tiny window of district court jurisdictional availability, one may profitably consult 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure §§ 3941–43 (1977).

*Izaak Walton League of America v. Schlesinger,* 337 F.Supp. 287, 291–93 (D.D. C.1971), does not lead to a different result. Steamboaters is simply not trying to remedy the commission's violation of clear, non-discretionary, legal duty under *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Essentially, Steamboaters seeks review of what it believes are substantive and procedural flaws by FERC in the granting of the exemption. In *Izaak Walton League,* the Atomic Energy Commission contended it never had to issue a NEPA statement to license a nuclear power plant. In the case of the North Umpqua dam, FERC has determined that an environmental impact statement is not needed because this particular project will not have a significant impact on the quality of the human environment.

Steamboaters will not be severely prejudiced by the lack of a federal forum in this Court. Steamboaters may convince FERC to allow it to participate in the commission proceedings and to issue a stay of the construction. In addition, National Marine represents the equivalent of Steamboaters' position and still opposes the project before the commission. FERC may reverse itself on the merits at the behest of National Marine, or Steamboaters, or both. In light of this, even if the district court could have jurisdiction under the Act, I would find this proceeding to be premature. FERC has yet

to rule on Steamboaters' request for a stay.[3] Steamboaters has not exhausted its administrative remedies. *See Washington Public Power Supply System v. Pacific Northwest Power Co.,* 213 F.Supp. 404, 410–11 (D.Or. 1962).

For these reasons, I grant the motion to dismiss for want of subject matter jurisdiction. I withhold entry of judgment for reasons stated above.

IT IS SO ORDERED.